IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | Case No: 92 CR 652 |
| v. | ) | |
| | ) | Honorable Matthew F. Kennelly |
| ROBERT J. TEZAK, | ) | *Judge Presiding* |
| Defendant. | ) | |

**FINAL SUPPLEMENTAL SUBMISSION OF DEFENDANT ROBERT J. TEZAK**

NOW COMES the Defendant, ROBERT J. TEZAK, by and through his attorney, DANIEL E. RADAKOVICH, and as and for his Final Supplemental Submission to this Honorable Court prior to Sentencing, which is currently set for Tuesday, May 2, 2013, states as follows. In support thereof, Defendant states as follows:

**I.      INCARCERATION OF DEFENDANT WOULD CREATE SIGNIFICANT HARDSHIP UPON DEFENDANT'S ELDERLY PARENTS**

As this Court is already aware from the Special Report dated January 6, 2012 prepared by the United States Probation Department, the Defendant lives with his elderly parents, father Qeuntin R. Tezak and mother Betty A. Tezak, both of whom are in excess of ninety years of age. Defendant is the sole caretaker of his parents Quentin R. Tezak and Betty A. Tezak as is indicated in the letter dated April 2, 2013 from Joseph L. Lillo, D.O. (a copy of which is attached hereto as Exhibit A) and the letter dated March 26, 2013 from Attorney Paul R. Bjekich (a copy of which is attached hereto as Exhibit B). As is indicated in Dr. Lillo's letter, both Quentin and Betty Tezak are suffering from dementia and both require full-time care. Dr. Lillo also notes that (defendant) Robert Tezak is their sole caregiver and that Robert Tezak resides with his parents and directs their medical care.

1

## II. INCARCERATION OF DEFENDANT WOULD CAUSE SIGNIFICANT HARDSHIP TO THE DEFENDANT IN LIGHT OF HIS HEALTH PROBLEMS

As this Court has already been made aware from both a previous filing (reference: Document No. 410) as well as during an in-court status hearing (reference: Document No. 413), the Defendant is in poor physical health and recently had surgery in an attempt to correct problems with his spine.

Defendant would also submit to this Honorable Court that his bladder cancer (initially diagnosed in January 2004 with recurrences in May 2004 and October 2012) has returned once more and that he is currently scheduled for surgery on May 28, 2013, which is to be followed by chemotherapy. This information is evidenced by the April 5, 2013 letter from Erik E. Alexander, M.D. (a copy of which is attached hereto as Exhibit C).

## III. ADDITIONAL INFORMATION SETTING FORTH SATISFACTION OF THE DEFENDANT'S RESTITUTION OBLIGATIONS

As stated in Defendant's original Supplemental Submission (filed November 26, 2012; reference: Document No. 406), Defendant argues that he has paid a far more significant portion of his restitution obligations than the Government has acknowledge in their various filings.

On April 17, 2013, defense counsel received copies of letters from Mr. Tezak sent by Charles P. Schulman, then an attorney at Sachnoff & Weaver, Ltd., to the following individuals: the Honorable Charles G. Case II, the United States Bankruptcy Court Judge assigned to Mr. Tezak's bankruptcy case; Robert M. Cook, Mr. Tezak's attorney in his bankruptcy case; Mary J. Kucharz, Assistant Corporation Counsel for the City of Joliet; and Niranjan Goel, Claims Specialist for CNA Insurance; and Charles M. Fraenkel of Leahy, Eisenberg & Fraenkel, Ltd, who represented Standard Mutual Insurance Company in Mr. Tezak's bankruptcy case (which are attached hereto as Exhibit D).

2

To confirm whether the substance of those letters was accurate, defense counsel sent a letter to the Chicago office of Reed Smith, LLP after learning that Reed Smith had merged with Sachnoff & Weaver in 2006 (an article from Crain's Chicago Business discussing the merger is attached hereto as Exhibit E [and is also available on the internet at http://www.chicagobusiness.com/article/20061016/NEWS04/200022458/sachnoff-weaver-to-merge-with-pittsburgh-law-firm]). Reed Smith fully cooperated and indicated their willingness to look into the issue but asked that defense counsel officially subpoena the requested material from the Sachnoff & Weaver, Ltd. case file. Defense counsel obtained a Subpoena in a Criminal Case from this Honorable Court (a copy of which is attached hereto as Exhibit F). Following the issuance of the subpoena, Reed Smith promptly complied with the subpoena and submitted a letter accompanied by forty-three pages of documents (a copy of which are attached hereto as Exhibit G; a letter from Attorney William S. Weltman is attached hereto as Exhibit H, which certifies the documents that are attached as Exhibit G).

The documents tendered by Reed Smith include copies of all the letters Mr. Tezak faxed to defense counsel on April 17, 2013, and additional letters not in Mr. Tezak's possession. Moreover, the documents tendered by Reed Smith include a letter from Mr. Schulman to Richard G. Patrick, Assistant United States Attorney, asking Mr. Patrick to file a Stipulation of Dismissal on behalf of the restitution creditors' adversary complaint against Mr. Tezak's bankruptcy filing. *See* Ex. B at 0039. A copy of the Stipulation of Dismissal enclosed with Mr. Schulman's letter to Mr. Patrick (Ex. B at 0040 – 0042), states that the restitution creditors entered into a settlement agreement whereby Mr. Tezak would make payments of an agreed amount in lieu of full repayment. Mr. Schulman surely would not have asked Mr. Patrick to file such a dismissal if Mr. Tezak had not completely paid the amount as required in the settlement agreement. Thus, it

is reasonable to infer that Mr. Tezak satisfied his restitution obligations as modified by the settlement agreement. In reviewing the certified copy of the bankruptcy case file, defense counsel did not find a filed or unfiled copy of the stipulation of dismissal. Whether the stipulation of dismissal was not filed due to an honest mistake, was lost from the file, or simply not included in the certified copy of the bankruptcy file due to a clerical error is irrelevant. Its existence, and Mr. Schulman's accompanying letter requesting it be filed, is clear evidence that Mr. Tezak made significant restitution as required by the settlement agreement entered by the restitution creditors and Mr. Tezak in 1995 (see Exhibit G at Page 0003, which is an April 1, 1996 letter from Charles Schulman to Charles Fraenkel referencing the "December 19, 1995 Settlement Agreement").

In addition to the stipulation of dismissal, additional correspondence tendered by Reed Smith shows actual proof of restitution payments and provides details of the Settlement Agreement between Mr. Tezak and the restitution creditors. Correspondence between Mr. Tezak's attorney, Robert M. Cook, and Mr. Schulman (Ex. G at 0001-0002), shows that the parties agreed to a settlement amount of $344,425.88 for all parties. The letters further indicate one payment of $50,221.58 distributed *pro rata* between restitution creditors Standard Mutual Insurance Co., CNA Insurance, the City of Joliet, Colonial Penn, Claims and Inspections Services, Inc., and the Crest Hill Fire Department. (Ex. G at 0003). Subsequent letters, (Ex. G at 0004 – 0017) show distribution of that money, including copies of checks payable to each party. Further, another letter from Mr. Schulman to Mr. Cook confirms receipt of an additional $119,000.00 on or about August 15, 1996. (Ex. G at 0024). Finally, letters from Mr. Schulman to other creditors and Mr. Cook (Ex. G at 0033-0037) make reference to payment of the "final installment" (Ex. G at 0033) of Mr. Tezak's "settlement obligation to the class of restitution

creditors." (Ex. G at 0037). This reference to a "final installment," especially described in Mr. Schulman's letter to Mr. Cook (Ex. G at 0037), clearly shows full satisfaction of Mr. Tezak's restitution obligations.

The documents from Reed Smith (successor firm to Sachnoff & Weaver, Ltd.), who represented parties in litigation against Mr. Tezak, confirm his assertion that he made significant restitution that has not been acknowledged or "credited" to Defendant by the Government. That the amount paid was less than the restitution originally ordered by the Court in the Judgment in a Criminal Case should not have significant bearing on this Court's ultimate decision. As Mr. Schulman noted in a letter to Mr. Cook on August 14, 1995: "in the event Standard Mutual, CNA, and the City of Joliet receive the above amounts, I indicated to you that Standard Mutual, CNA, and very likely, the City of Joliet will communicate to any entity, court, or other official relative to Mr. Tezak's present or future criminal sentence, that: (1) Standard Mutual, CNA, and the City of Joliet consider themselves fully paid." (Ex. G at 0001). Given the above referenced documentation from Reed Smith, this Court should consider Mr. Tezak's restitution fully repaid

WHEREFORE, the defendant, ROBERT TEZAK, respectfully prays this Honorable Court for the following relief:

A. To fashion a disposition of this case which would not include any additional jail time; or

B. Should this Honorable Court decide that Defendant Tezak should serve additional jail time, that he be allowed to serve any such additional jail time under house arrest monitored by the federal authorities in Mesa, Arizona so that he (Defendant Tezak) can continue to be the caregiver to his elderly parents and, in addition, continue to receive medical treatment from his medical providers.

Respectfully Submitted,

By:    /s/ Daniel E. Radakovich
        Daniel E. Radakovich,
        Attorney for Defendant Robert J. Tezak

DANIEL E. RADAKOVICH
Attorney for Defendant
900 West Jackson Boulevard
Suite 5-East
Chicago, Illinois 60602
312/ 733-5116